UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MULTICARE HEALTH SYSTEM, INC., a not for profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>MAPLEHURST BAKERIES, INC., a foreign corporation; and GEORGE WESTON BAKERIES, INC., a foreign corporation,<br><br>Defendants.<br><br>BENICORP INSURANCE COMPANY, an Indiana insurance company d/b/a ADMINICLE and AVEMCO INSURANCE COMPANY, a Maryland insurance company,<br><br>Third Party Defendants. | Case No. C04-5790 KLS<br><br>ORDER GRANTING MAPLEHURST BAKERIES MOTION FOR SUMMARY JUDGMENT |

This litigation involves a claim for payment of $227,739.53, which amount the plaintiff alleges represents the unpaid balance of medical bills incurred for treatment of the defendant's insured. The defendant denies that any additional amounts are due. Both parties filed summary judgment motions. (Dkt. #27 and 33). The defendant's motion is based on a contractual statute of limitations defense.

The undersigned has reviewed all of the pleadings filed by the plaintiff, defendants, and third party defendants. Based on the court's review of the pleadings, Maplehurst Bakeries motion for summary judgment is hereby granted and the plaintiff's claim is dismissed.

Order Granting Motion for Summary Judgment
Page - 1

**FACTUAL BACKGROUND.**

On December 11, 1999 Michelle Nieves was seriously injured when she was hit by an automobile. She was admitted to the emergency room at Mary Bridge Children's Hospital that same date and was subsequently discharged from the hospital on January 11, 2000. Michelle's mother was an employee of Maplehurst Bakeries and as such Michelle had medical coverage through Maplehurst Bakeries Employees Benefits Plan ("Plan"). Dkt. #53, Exhibit A.

In addition to providing medical insurance, the Plan encouraged the use of a "preferred provider." A "preferred provider" is defined in the Plan as follows:

> "**hospital** or ancillary service provider which has an agreement in effect with the **preferred provider organization** (PPO) to accept a reduced rate for services rendered to **covered persons.** This is known as the **negotiated rate.** Because **preferred provider** cannot bill the **covered person** for any amount in excess of the **negotiated rate.** Because the **covered person** and the **Plan** save money when services, supplies or treatment are obtained from providers participating in the **Preferred Provider Organization**, benefits are usually greater than those available when using the services of a **nonpreferred provider. Covered persons** should contact the Human Resources Department for a current listing of **preferred providers.**

Dkt. #53, Exhibit A, page 10. It is undisputed that Mary Bridge Children's Hospital, as part of MultiCare, was a Preferred Provider.

The Plan permits an employee to assign payment directly to a hospital that furnished appropriate services. Dkt. #53, Exhibit A, page 57. When Michelle Nieves was admitted to the hospital her mother signed a "Conditions of Treatment" provided by MultiCare which included an assignment of benefits as follows:

> 6. **ASSIGNMENT OF BENEFITS.** The undersigned authorizes payment directly to MultiCare Health System, (MHS), of insurance or other third party payor benefits specified herein and otherwise payable to him/her.

Dkt. #31, Exhibit S.

The Plan also made specific provisions for direct payment to preferred providers as follows:

> **Preferred providers** normally bill the **Plan** directly. If services, supplies or treatment has been received from such a provider, benefits are automatically paid to that provider. The **covered person's** portion of the **negotiated rate**, after the **Plan's** payment, will then be billed to the **covered person** by the **preferred provider.**

Dkt. #53, Exhibit A, page 57

The "Definitions" portion of the Plan defines "negotiated rate" as the rate "the **preferred**

**providers** have contracted to accept as payment in full for **covered expenses** of the **Plan.**" Dkt. #53, Exhibit A, page 70. "Preferred Provider" is defined as a "hospital . . . who has an agreement in effect with the **Preferred Provider Organization** at the time services are rendered. **Preferred providers** agree to accept the **negotiated rate** as payment in full." Dkt. #53, Exhibit A, page 72. A "Preferred Provider Organization" is defined as "[a]n organization who selects and contracts with certain **hospitals** . . . to provide **covered persons** services, supplies and treatment at a **negotiated rate.**" Dkt. #53, Exhibit A, page 72. Finally, by way of definition, a "claims processor" is defined as "[t]he company contracted by the **employer** which is responsible for the processing of claims for benefits under the terms of the **Plan** and other ministerial services deemed necessary for the operation of the **Plan** as delegated by the **employer."** Dkt. #53, Exhibit A, page 62.

The portion of the Plan on which the defendant Maplehurst relies as the basis of its summary judgment motion is found at Dkt. #53, Exhibit A, page 58 and reads as follows:

**LEGAL ACTIONS**

No action at law or in equity shall be brought to recover on the benefits from the **Plan** prior to the expiration of sixty (60) days after all information on a claim for benefits has been filed and the appeal process has been completed in accordance with the requirements of the **Plan**. No such action shall be brought after the expiration of two (2) years from the date the expense was **incurred**, or one (1) year from the date a completed claim was filed, whichever occurs first.

It is undisputed that Michelle Nieves was hospitalized from December 11, 1999 until she was released from the hospital on January 21, 2000. The expense was incurred as of January 21, 2000. For purposes of this summary judgment motion the defendant is relying on the two year portion of this contractual statute of limitation. Therefore, if the contractual statute of limitation applies, the plaintiff was required to bring this claim on or before January 21, 2002, which it did not do.

**PREFERRED PROVIDER NETWORK.**

MultiCare claims that it is a third-party beneficiary of the Plan based on the contractual relationship between MultiCare**,** First Choice, CNN, Benicorp (Adminicle) and the Maplehurst Plan. It has apparently abandoned its argument that it is a third party beneficiary under the assignment signed by Mrs. Nieves. In order to determine whether MultiCare is a third party beneficiary this court has carefully reviewed all of the contracts between the various entities.

**MULTICARE HEALTH SYSTEM and FIRST CHOICE HEALTH NETWORK CONTRACT.** MultiCare Health Systems contract with First Choice Health Network is Exhibit C to Dkt. #31.[1] According to the contract, MultiCare is a preferred provider and it agreed to accept, as payment in full for its medical services, the contracted rate as set forth in the contract with First Choice Health Network.

**FIRST CHOICE HEALTH/SOUND HEALTH (FCHN) and CCN MANAGED CARE CONTRACT.** While Maplehurst raises an issue as to whether the contract between CCN and Sound Health (Dkt. #31, Exh. B) reflects the contract between CCN and First Choice Health, it admits for purposes of this motion that they are one and the same. Therefore, the contract between CCN and Sound Health is assumed to be the contract between CCN and First Choice when Michelle Nieves was injured.

According to the contractual terms, CCN is a health care management company. It contracted with First Choice/Sound Health in order to "secure the cost savings and other benefits of FCHN's Provider Agreements for the benefit of its payors." Dkt. #31, Exh. B.

First Choice/Sound Health is a managed health care company that contracts with health care providers for the purpose of creating a preferred provider health care system. Dkt. #31, Exh. B. By entering into the contract, the parties intended to make First Choice/Sound Health preferred providers available to the clients of CCN. The terms of the contract required First Choice/Sound Health to require its preferred providers to accept the reimbursement amounts which were included as part of the contract. For its part, CCN agreed to apply the contract reimbursement rates to bills received from the hospital preferred providers. This meant that the hospital would bill for services at its "usual, billed charges." First Choice was then required to forward the bills to CCN so it could adjust the bill to reflect the contractually agreed upon rate. Dkt. #31, Exh. B, paragraphs 2.05 and 3.

**CONTRACT BETWEEN CCN and BENICORP.** Benicorp is a "Payor" who provides health care claims administration services to health care purchasers, such as Maplehurst Bakeries Employees Benefits Plan. A purpose of the contract between CCN and Benicorp is to allow the Payor to "utilize the health care provider networks within the Service Areas for the group health care plan(s) that it administers." Dkt. 35, Exh. 4, Preamble. Benicorp agreed "to reimburse the Preferred Providers

---

[1] For purposes of this summary judgment motion, Maplehurst agrees this contract is to be considered by the court.

according to the Reimbursement Amounts specified in the contracts between the Preferred Providers and CCN or its affiliated entity. Those Reimbursement Amounts shall constitute payment in full for Health Care Services or Benefits provided to Beneficiaries by the Preferred Providers. . ." Dkt. 35, Exh. 4, para. 2.08. In addition, Benicorp agreed to remit the amounts due directly to the Preferred Providers. Dkt. 35, Exh. 4, para. 2.09. Benicorp also agreed to send inpatient claims from the Preferred provider hospitals "to CCN so that CCN can price the claims according to the contract payment rates in effect for each hospital." Dkt. 35, Exh. 4, para. 2.13 and 3.05.

**CONTRACT BETWEEN ADMINICLE (BENICORP) and MAPLEHURST:** Maplehurst Bakeries and Adminicle (Benicorp) entered into an Administrative Services Agreement which appointed Adminicle (Benicorp) as the claims processor of Maplehurst's Plan. In addition, Adminicle (Benicorp) agreed to "propose PPOs with which the Claims Processor [Adminicle] has relationships for use by the Plan." Dkt. 53, Exh. B, para. 3.17.

**SUMMARY JUDGMENT STANDARD.**

Pursuant to Fed. R. Civ. P. 56 ( c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex Corp., v. Catrett,* 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita elec. Indus. Co. V. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986); *T.W. Elec. Service In. V. Pacific Electrical Contractors Association,* 809 F.2d 626, 630 (9th cir. 1987).

**MAPLEHURST'S MOTION.**

1  Maplehurst initially based its summary judgment motion on the Assignment of Benefits which
2  authorized direct payment to MultiCare. Dkt. #31, Exh. S. The plaintiff responded by basing its right to
3  reimbursement on the various contracts described above and, therefore, independent of the Assignment.
4  This court concludes, however, that both the Assignment and the various contracts all derive the
5  right of payment from the Maplehurst Plan. The contractual link between MultiCare and Benicorp, while
6  long, merely allows the hospital to directly bill the insurer with the expectation that it will be paid based on
7  the negotiated rates, which are less than the "usual, billed charges." The hospital also agrees to accept the
8  negotiated rates as payment in full. This relationship is acknowledged and approved in the Maplehurst
9  Plan if an insured uses a preferred provider. It is clear that the contracts connecting MultiCare with the
10 Maplehurst Plan were for the purpose of ensuring that MultiCare would be a third-party beneficiary of the
11 Plan. MultiCare not only should receive the benefit of its third-party beneficiary status but it is also bound
12 by the contractual statute of limitations of the Plan.
13 The Plan clearly prohibits the filing of any legal action more than two years from the date the
14 expense was incurred. It is undisputed that the expense was incurred no later than January 21, 2000. The
15 contractual statute of limitations ran on January 21, 2002. The plaintiff did not file this legal action until
16 November 23, 2004, or two years and ten months after the contractual statute of limitations ran. The
17 defendant is entitled to summary judgment and this case is hereby dismissed.
18 Due to the Court's granting of the defendant's summary judgment motion, there is no need to address
19 the plaintiff's summary judgment motion.

DATED this 25th day of October, 2005.

Karen L. Strombom
United States Magistrate Judge